# United States District Court

### DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>v.<br>STEPHANIE GRAY |  | Criminal Complaint<br><br>CASE NUMBER: 06- 105M-MPT |

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief. In or about __April 2006__ in __Kent__ County, in the District of Delaware, defendant did

conspire to distribute heroin and fentanyl and use a communication facility in facilitating the distribution of heroin and fentanyl,

in violation of Title ____21____ United States Code, Section(s) __841(a)(1), 843(b) and 846__.

I further state that I am a __DEA Special Agent__ and that this complaint is based
                            Official Title
on the following facts:

See attached Affidavit.



Continued on the attached sheet and made a part hereof:    Yes

```
                                            Signature of Affiant
                                            Thomas Jacobs
                                            Special Agent, DEA
```

Sworn to before me and subscribed in my presence,

September 8, 2006                              at   Wilmington, DE
Date                                                City and State

Honorable Mary Pat Thynge
United States Magistrate Judge
Name & Title of Judicial Officer                    Signature of Judicial Officer

## AFFIDAVIT IN SUPPORT OF AN ARREST WARRANT
## FOR STEPHANIE GRAY

1.  Your affiant, Thomas E. Jacobs, states he is a Special Agent with the Drug Enforcement Administration ("DEA"), United States Department of Justice and have been so employed by the DEA for approximately 16 and one half years. I have been assigned to the DEA Dover Resident Office since October 31, 2004 and prior to this I was assigned to the Philadelphia Field Division, Songkhla, Thailand Resident Office and the Florence, SC Resident Office. During the course of my career as a Special Agent of the DEA, I have participated in numerous investigations of unlawful drug distribution in violation of Title 21, United States Code. These investigations resulted in the conviction and or guilty pleas of numerous defendants in state and federal court. I have conducted or participated in surveillance, undercover transactions, execution of search warrants, debriefings of informants and other sources of information. Through my training, education, and experience, I have become familiar with the manner in which illegal drugs are imported and distributed, the methods of payment for such drugs, and some of the methods used to disguise the source and nature of the profits made by narcotics dealers.

2.  This affidavit is submitted to obtain an arrest warrant for Stephanie GRAY for violations of Title 21 of the United States Code. The probable cause set forth in this affidavit is based on information your affiant has obtained from Delaware State Police officers, the Delaware State Medical Examiner's Office, the Delaware Correctional Center, and from my personal observations and knowledge. Because this affidavit is being submitted solely for the purpose of establishing probable cause, not all facts relating to the investigation are included herein.

3.  On April 28, 2006 Sergeant Michael Cosgrove (Delaware State Police) was assigned to investigate the death of Seth Boyd who had apparently died as a result of a heroin

overdose. Sgt. Cosgrove arrived at Kent General Hospital (KGH) in Dover, DE and contacted the hospital staff. Sgt. Cosgrove was advised S. Boyd was pronounced dead at 7:10 p.m. by Doctor Andre Aswegan. Sgt. Cosgrove learned through his investigation S. Boyd's sister-in-law, Michelle Boyd had arrived at S. Boyd's residence to drive him to a surprise birthday party and upon making initial contact with S. Boyd, he told M. Boyd to wait in the car and he would be ready in 5 to 10 minutes. M. Boyd waited 15 to 20 minutes and then sent her daughter to knock on the front door; however, there was no response. M. Boyd attempted to gain entry into the residence but could not and was instructed by her husband, whom she had called, to get into the house and check on S. Boyd. M. Boyd broke a window and entered the residence and discovered S. Boyd lying on the living room floor. She exited the residence and contacted a neighbor and 911 was called and S. Boyd was transported to KGH.

4. An autopsy was conducted on April 29, 2006 by Doctor Judith G. Tobin on S. Boyd at the Medical Examiner's Office in Seaford, DE. The official cause of S. Boyd's death was respiratory depression due to inhalation of Fentanyl.

5. Subsequent to April 28th, Detective Andrel Martinez of the DSP Special Investigations Unit and I interviewed W1, S. Boyd's girlfriend. W1 stated that on the date of S. Boyd's death, Joe BENTLEY had delivered heroin and cocaine to Boyd's residence. W1 said the heroin BENTLEY delivered was contained in 13 bags marked "Hummer 2." W1 said that she used two bags of the heroin and took four of the bags with her when she left for work that afternoon. W1 said that Boyd kept the 7 remaining bags. W1 said that Boyd was packing to attend a birthday party for his brother that night. W1 said that one of the telephone numbers she and Boyd used to get in touch with BENTLEY was 981-4398. W1 also said that she and Boyd had purchased heroin from BENTLEY on prior occasions and that she had on some of those

occasions negotiated the terms of the purchases over the telephone with BENTLEY'S girlfriend, STEPHANIE GRAY. W1 also stated that GRAY was present when BENTLEY delivered heroin and cocaine to W1 and that on some occasions GRAY accepted and counted the money W1 paid for the drugs.

6. I have reviewed photographs of Boyd's home taken by DSP on 4/28. The photographs show seven bags of heroin marked "Hummer 2" on a desktop. Two of the bags are opened and appear to be empty. One of the empty bags contained a straw.

7. On May 5, 2006, Det. Martinez and other DSP officers established surveillance of BENTLEY and STEPHANIE GRAY in the Dover, Delaware area. At approximately 1:15 p.m., BENTLEY and GRAY were observed in a green Ford Explorer bearing DE registration # PC65048 parked in the parking lot of Dover Commons. Det. Mary McGuire observed a Mercury Mystique bearing DE registration # 174214 operated by a white female (JP) pull up next to the Explorer which was parked in the Dover Commons parking lot. Det. McGuire informed other detectives she observed what appeared to be a drug transaction between JP and J. BENTLEY. Det. McGuire observed J. BENTLEY approach the driver's side of the vehicle and contact JP. After a brief exchange, J. BENTLEY walked to the rear of the Explorer and opened the hatch and appeared to be retrieving something from the vehicle. J. BENTLEY placed his hand in his front pants pocket and walked back to JP and reached into his pants pocket as he approached her. J. BENTLEY returned to the Explorer again and then returned to JP's vehicle a second time. JP remained in place for approximately five minutes and then drove away.

8. Detectives followed JP after she departed the area and conducted a vehicle stop for a traffic violation and after obtaining consent to search the vehicle, detectives discovered JP in

possession of heroin and cocaine. The heroin was labeled "Hummer 2". JP was arrested on state drug charges. JP also was in possession of J. BENTLEY's telephone number.

9. After the transaction with JP, DSP detectives observed GRAY operate the Explorer and J. BENTLEY sitting in the front passenger seat. GRAY drove away from Dover Commons and DSP Det. Tino Disilvestro conducted a traffic stop on the Explorer.

10. Upon approaching the Explorer, Det. Disilvestro noticed the odor of burnt marijuana when he contacted J. BENTLEY on the passenger side of the vehicle. Det. Disilvestro asked GRAY and J. BENTLEY for consent to search the vehicle, which both granted. Det. Disilvestro located numerous bags of heroin and cocaine inside the vehicle. Several of the heroin bags were labeled "Hummer 2", the same name of the heroin purchased by S. Boyd and W1 the day of S. Boyd's death. Det. Disilvestro also located a .22 caliber pistol (Heritage MFG Miami, FL SN: HZ14352) and four live rounds of ammunition in the side pocket of a suitcase located in the rear area of the Explorer where detectives had seen J. BENTLEY in the Dover Commons parking lot. Det. Disilvestro also seized drug scales and miscellaneous drug paraphernalia from the vehicle. Detectives found in BENTLEY'S wallet a copy of the obituary of Seth Boyd.

11. J. BENTLEY and GRAY were transported to Troop #3 in Camden, DE where they were both advised of their Miranda Rights, which they waived and agreed to speak with Det's Martinez and Boyce. The interviews of J. BENTLEY and GRAY were video and audio taped. During his interview, J. BENTLEY admitted to having knowledge the firearm was in the vehicle and stated he had purchased the firearm at a gun show and he had fired the weapon. J. BENTLEY admitted to possession of the heroin and cocaine detectives located inside the Explorer.

12. During her interview, GRAY stated that BENTLEY has been selling drugs for about 6 months but less than one year. GRAY stated she knew J. BENTLEY had drugs under the front passenger seat. She stated J. BENTLEY had a blue lockbox in the vehicle and he had needles, cocaine and bags of heroin in the box. She stated she thought the heroin was morphine. GRAY stated she has used heroin but has not done so in approximately one month. Gray also admitted she had negotiated on behalf of BENTLEY drug transactions with W1 over the telephone. GRAY further stated that BENTLEY was purchasing 1 to 3 logs of heroin per week for a period of 6 to 8 months.

13. On 07-31-2006 your affiant obtained from the Delaware Correctional Center in Smyrna, DE recordings of telephone conversations between BENTLEY and his father, Arthur BENTLEY, who is currently incarcerated on pending state drug charges. In one of those conversations, recorded on May 1, 2006, the BENTLEYS discussed the potency of some heroin obtained by J. BENTLEY. J. BENTLEY told his father, "It killed two of my customers". J. BENTLEY stated the heroin was pure and uncut; however, A. BENTLEY stated, "No, it has fentanyl in it". J. BENTLEY then asked if A. BENTLEY remembered W1 and A. BENTLEY stated he did. J. BENTLEY then stated, "It killed her boyfriend. He died Friday night and that was one of my best customers. And it killed one of [W1's] friends. So [W1], I gave her a bag and she gave it to her boyfriend and one of her friends and it killed both of them".

14. The DEA Northeast Regional Laboratory has completed a partial analysis of the drug exhibits submitted which were seized in this investigation and positive results have been obtained for heroin and fentanyl.

15. Based on my experience, a "log" of heroin typically contains 10 "bundles." A "bundle" typically contains 13 bags. A bag of heroin typically weighs approximately .02 grams.

16. I know from DEA literature that fentanyl has an analgesic potency of about 80 times that of morphine and that the biological effects of fentanyls are indistinguishable from those of heroin. I also know from experience that in recent months fentanyl has increasingly been mixed with heroin distributed in Delaware and other parts of the country.

## CONCLUSION

Based on the aforementioned facts and your affiant's training and experience, probable cause exists to believe Stephanie GRAY conspired with Joseph BENTLEY to distribute heroin and fentanyl, which are controlled substances under Title 21 of the United States Code, in violation of Title 21, United States Code, Section 846 and 841(a)(1); and used a communication facility (i.e., telephone) in facilitating the distribution of heroin and fentanyl, in violation of Title 21, United States Code, Section 843(b).

THOMAS E. JACOBS
Special Agent
Drug Enforcement Administration

Sworn to before me this
____ 8 ____ day of September, 2006

Mary Pat Thynge
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF DELAWARE